WISE, Presiding Judge.
The appellant, Craig Newton, was convicted of capital murder for the killing of Charles Whatley. The murder was made capital because he committed it during the course of a first-degree robbery. See § 13A-5-M0(a)(2), Ala.Code 1975. Newton was also convicted of first-degree arson, a violation of § 13A-7-41, Ala.Code 1975, and first-degree theft of property, a violation of § 13A-8-3(b), Ala. Code 1975. After a sentencing hearing, by a vote of 10-2, the jury recommended that Newton be sentenced to death on the capital murder conviction. The trial court accepted the jury’s recommendation and sentenced him to death on the capital murder conviction. It also sentenced him to serve fifteen years in prison on the arson conviction and ten years in prison on the theft conviction. Newton did not file any postjudgment motions. This appeal followed.
Because this is a case in which the death penalty has been imposed, we have reviewed it for plain error. See Rule 45A, Ala. R.App. P. Although the lack of an objection at trial will not bar our review of an issue in a case involving the death penalty, it will weigh against any claim of prejudice the appellant may raise. See Ex parte Kennedy, 472 So.2d 1106 (Ala.1985). Rule 45A, Ala. R.App. P., provides:
“In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review ... whenever such error has or probably has adversely affected the substantial right of the appellant.”
“[This] plain-error exception to the contemporaneous-objection rule is to be ‘used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.’ ” United, States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 n. 14 (1982)).
Newton does not challenge the sufficiency of the evidence to support his convictions. However, we have reviewed the evidence, and we find that it is sufficient to support his convictions. The following summary of the relevant facts, as prepared by the trial court, may be helpful to an understanding of this case:
“During the evening of April 30, 2001, the victim, Charles Clarence Whatley, and Chaundra Alexander got together and started smoking crack cocaine at Alexander’s residence. ... [0]n the morning of May 1, 2001 they ran out of drugs and started looking for more. While looking for drugs they went to a residence in Tuskegee, Alabama, and encountered the Defendant, Craig Newton. *463 Defendant said he could take them to get some more drugs.
“On the way to get the drugs, victim, Alexander and defendant stopped at the residence of the victim. Once at What-ley’s residence, Defendant demanded that the victim give him all of his money and tell him where the guns were in the house. Defendant also instructed Alexander to tie the victim up with an electrical cord.
“When the victim tried to free himself from the cord, Defendant put a bag over the victim’s head in an attempt to suffocate him. When he began to free himself from the plastic bag, the Defendant then poured gasoline or lighter fluid on his head, and set the victim on fire while continuing to demand the whereabouts of the victim’s weapons and money. The co-defendant testified that the victim had extinguished the fire on himself when the Defendant approached the victim, put a pistol to the side of his head and shot him. Victim died from a gunshot wound to the head.
“Defendant and Alexander loaded at least four rifles and/or shotguns and other miscellaneous items from the house onto the victim’s truck, and left the residence. They returned to the location where the victim and Alexander had picked up the defendant and unloaded the weapons and other items. Milton Anderson was at this residence and assisted in unloading the weapons. He saw Defendant and Alexander and heard them arguing about how to divide up the property. Defendant also told Anderson what he had done.
“The victim’s residence was severely damaged by fire. The victim’s body was also severely burned and was only able to be identified through the use of dental records.
“Chaundra Alexander entered a plea of guilty to the reduced charge of Murder for her role in the death of the victim, Charles Clarence Whatley, and is the co-defendant of this defendant.”
(C.R. 489-90.)
I.
Newton’s first argument is that “the prosecution’s opening statement in the penalty phase in which it stated to the jury that appellant had two prior robbery convictions but never proved such deprived appellant of his right to a fair sentencing hearing and his right to due process of law and protection from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.” (Newton’s brief at p. 15.)
During his penalty phase opening argument, the prosecutor stated:
“The third aggravator that we expect to prove — and I won’t read you the exact statutory wording — but is that the defendant has previously been convicted of a crime of violence. As a matter of fact, we will introduce certified copies — and that’s the quick, simple way to do it — of his prior convictions in Macon County on two counts of robbery which is considered to be by law a crime of violence. And the conviction of a prior crime of violence is another aggravating circumstance.
“So we submit to you that at the end of all the evidence, we will have proven to you three statutory aggravating circumstances: Robbery, cruel and heinous, prior acts crimes of violence — convictions of prior crimes of violence, to wit: The two robbery charges.”
(R. 1054.) However, when the State sought to admit certified copies of the prior convictions, the trial court refused to admit them, finding that the State had not properly proved the prior convictions.
*464 In its opening argument, the State indicated that it expected to prove three aggravating circumstances. During its closing argument, after the trial court refused to admit evidence about the prior robbery convictions, the State referred to only two aggravating circumstances — Newton committed the murder during the course of a first-degree robbery and the murder was especially heinous, atrocious, or cruel compared to other capital offenses. Also, during its penalty phase oral charge, the trial court instructed the jury on only those two aggravating circumstances. Finally, the trial court instructed the jury that the arguments were not evidence, and we presume that the jury followed the trial court’s instructions. See Taylor v. State, 666 So.2d 36 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995). Under these circumstances, we find that any error in this regard was harmless and that the jury would have returned the same recommendation even without the error in the prosecutor’s opening argument. See Rule 45, Ala. R.App. P.
II.
Newton’s second argument is that the trial court improperly excluded evidence about “the bad circumstances of [his] upbringing.” (Newton’s brief at p. 17.) Specifically, he contends that the trial court improperly excluded “documentary evidence supporting the defense contention that [he] had grown up in a household filled with acts of violence and other criminal acts by his step father.” (Newton’s brief at p. 20.)
During the penalty phase of the trial, Anita Newton, Newton’s sister, testified that she had two younger brothers and two younger sisters, that she did not remember her father being in the household, and that her mother remarried Arnold Brown. She also testified that Brown “used to take his penis out and walk around the house holding it, and he made a pass at me more than once,” and that Newton was exposed to those things. (R. 1085.) Anita further testified that Brown whipped them a lot on their behinds and their hands with an extension cord. She also testified that Brown and their mother fought and hit each other. Finally, she testified that they did not have any contact with their real father while they were growing up and that Brown did not even like for them to talk about him.
After Anita testified, in an effort to corroborate her testimony, the defense sought to admit a divorce decree for Newton’s mother and Brown and a report from the Alabama Board of Pardons and Paroles that showed the various offenses Brown had committed. The State objected to the admission of the documents, arguing that Anita’s credibility had not been attacked and that, although one exhibit showed that Brown had been convicted of indecent exposure, it did not show that it involved Anita or Newton. The trial court sustained the State’s objection.
Rule 403, Ala. R. Evid., provides:
“Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”
See also Houston v. State, 565 So.2d 277, 281 (Ala.Crim.App.1990) (holding that “[t]he exclusion of admissible evidence does not constitute reversible error where the evidence ‘would have been merely cumulative of other evidence of the same nature, which was admitted’ ”). In this case, much of the information that was included in the excluded documentation was not relevant and could have resulted *465 in a confusion of the issues for the jury. Also, the information that was relevant was merely cumulative to testimony by Anita that had not been disputed by the State. Finally, in its sentencing order, the trial court found that certain facts about which Anita testified constituted nonstatu-tory mitigation. Under these circumstances, we do not find that the trial court erred to reversal in excluding the documents the defense sought to introduce.
III.
Newton’s third argument is that the trial court “erred in not requiring the prosecution to state its reasons for exercising 21 of its 22 peremptory challenges to remove African-Americans from the jury.” (Newton’s brief at p. 21.) After the jury was struck, but before it was sworn, the following occurred:
“[FIRST DEFENSE COUNSEL]: Your Honor, pursuant to Batson versus Kentucky and its progeny, the defense cites the 14th Amendment to the United States Constitution and like provisions, plural, of the Alabama Constitution of 1901 guaranteeing the defendant’s equal rights.
“[PROSECUTOR]: Your Honor, does the State get the opportunity to make motions first?
“THE COURT: Go ahead.
“[FIRST DEFENSE COUNSEL]: The defense makes a motion in that — I did not write down the race of the strikes, but it appeared that the State had 22 strikes and exercised all but one, that being the third strike of juror number 85A of African-American jurors. We think that based on its record, we think we have to make our motion.
“THE COURT: I have a feeling we’re going to hear the same motion here.
“[PROSECUTOR]: Your Honor, we’re going to have a Batson motion. The State makes a Batson motion. And we’d like the record to reflect that there were a total of [sic] Caucasians.
“THE COURT: Are you going to respond to his motion first?
“[PROSECUTOR]: This is a response and our motion. There were a total of 12 Caucasians on this jury list. The defense struck 11 of those 12 Caucasians. Therefore, there is no Caucasian but one left for the State to even have the opportunity to strike when the defense gets through. We submit that 11 of their 21 strikes were Caucasians, which means that they struck all but one of the Caucasians — Two. I’m sorry. That’s not correct. We did strike one Caucasian early on. And then we see the pattern they’re striking every Caucasian. So we don’t bother to exercise any Caucasian strikes that we might have, because they’ve struck them all but one. Out of 21 strikes.
“THE COURT: Do you want to respond to his?
“[FIRST DEFENSE COUNSEL]: Well, I can respond. I can state a reason for every single strike if the Court so directs.
“THE COURT: Of course, I have been privy to the process, the selection process. And I made extensive notes myself about each one of these jurors. I’m just trying to determine right now whether I see there being a prima facie case made. Notably we only had 12 Caucasians in a county that is 89 percent African-American; is that correct?
“[FIRST DEFENSE COUNSEL]: I don’t know.
“THE COURT: So we had 11 or 12 Caucasians out of a group of 55. I believe we started out with 56, and one didn’t show up....
*466 “[FIRST DEFENSE COUNSEL]: I did not write down the race of our strikes. I’m not disputing what [the prosecutor] said. I just did not write it down.
“THE COURT: You did 10 Caucasians.
“[PROSECUTOR]: He did 11 Caucasians out of his 21 strikes. We had only two Caucasians left 13 from which we could have struck, taking away their Caucasian strikes. And we struck one of the two Caucasians. So we had nothing left to strike from except African-Americans. On the other hand, they purposely and selectively struck the Caucasians off this jury. And I challenge them. I believe that that’s a — the prima facie showing is the composite number that winds up on the jury as opposed to the proportion which was on the jury panel from which it was struck which constitutes the prima facie case out of a — let me see if I can get my math correct. There were a total of 13 Caucasians out of 55 which constitutes not quite 30 percent.
“[FIRST DEFENSE COUNSEL]: Were there 13 or were there 12?
“[PROSECUTOR]: There were 13. But we struck one, and y’all struck one. Y’all struck 11 and there’s one on there. That’s 13. So 13 out of a total of 55 is at least a—
“[SECOND DEFENSE COUNSEL]: 23.6 percent.
“[PROSECUTOR]: That’s approximately 24 percent of the panel was Caucasian, and we wind up with one out of 14, which is — what’s that percentage, please?
“[FIRST DEFENSE COUNSEL]: We have one Indian in the jury box.
“[PROSECUTOR]: There was one Indian on the venire.
“[SECOND DEFENSE COUNSEL]: One out of 14 is seven percent.
“[PROSECUTOR]: So we started with a 24 percent ratio on the jury veni-re and we end up with a seven percent representation in the final jury pool. And we submit that that constitutes a prima facie case of discrimination on part of the defense counsel.
“THE COURT: Well, first of all, [defense counsel], I’m going to deny the defense motion on Batson.”
(R. 476-81.)
“In Batson the United States Supreme Court held that black veniremembers could not be struck from a black defendant’s jury because of their race. In Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the court extended its decision in Batson to apply also to white defendants.... The United States Supreme Court in Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), held that the protections of Batson were also available to defense counsel in criminal trials. The Alabama Supreme Court has held that the protections of Batson apply to the striking of white prospective jurors. White Consolidated Industries, Inc. v. American Liberty Insurance, Co., 617 So.2d 657 (Ala.1993).”
Grimsley v. State, 678 So.2d 1194, 1195 (Ala.Crim.App.1995).
“After the appellant makes a timely Bat-son motion and establishes a prima facie showing of discrimination, the burden shifts to the state to provide a race-neutral reason for each strike.... See, e.g., Ex parte Bird,, 594 So.2d 676 (Ala.1991). We will reverse the circuit court’s ruling on the Batson motion only if it is ‘clearly erroneous.’ Jackson v. State, 549 So.2d 616 (Ala.Cr.App.1989).”
Cooper v. State, 611 So.2d 460, 463 (Ala. Crim.App.1992).
*467 “Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext. [People v.] Wheeler, 22 Cal.3d [258] at 282, 583 P.2d [748] at 763-64, 148 Cal.Rptr. [890] at 906 [(1978)]. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
“1. The reasons given are not related to the facts of the case.
“2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions.
“3. Disparate treatment — persons with the same or similar characteristics as the challenged juror were not struck....
“4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that is likely to disqualify the juror was asked to black jurors, but not to white jurors....
“5. The prosecutor, having 6 peremptory challenges, used 2 to remove the only 2 blacks remaining on the venire....
“6. ‘An explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.’ Slappy [v. State], 503 So.2d [350] at 355 [ (Fla.Dist.Ct.App.1987) ]. For instance, an assumption that teachers as a class are too liberal, without any specific questions having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror.”
Ex parte Branch, 526 So.2d 609, 624 (Ala.1987). Finally,
“Alabama courts have recently held that even a showing that [a] party had ... a high percentage of strikes used against a minority was not alone enough. In Ex parte Trawielc, 698 So.2d 162, 168 (Ala.1997), the Alabama Supreme Court held, ‘Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination.’ ”
Armstrong v. State, 710 So.2d 531, 533 (Ala.Crim.App.1997).
Initially, we note that, at trial and in his brief to this court, Newton relies solely on the number of black veniremembers the prosecution struck. Also, the record on appeal does not include any documents that show the names, race, and numbers of the prospective jurors in this case.
“[T]he record does not contain the clerk’s office jury list of any relevant information about the jurors. ‘It is the appellant’s duty to provide this court with a complete record on appeal.’ Knight v. State, 621 So.2d 394 (Ala.Cr.App.1993). See also Holder v. State, 584 So.2d 872 (Ala.Cr.App.1991). We cannot predicate error on a silent record. Hutchins v. State, 568 So.2d 395 (Ala.Cr. App.1990).”
Roberts v. State, 627 So.2d 1114, 1116 (Ala.Crim.App.1993). See also Baker v. State, 683 So.2d 1 (Ala.Crim.App.1995). Finally, we have thoroughly reviewed the record of the jury selection proceedings and the Bat-son arguments. In light of the argument presented by the prosecution, including the pattern of strikes of white venire-members by the defense, we do not find that there is any inference of discrimination by the prosecution on the basis of race. Therefore, the trial court’s decision to deny Newton’s Batson motion without requiring the prosecution to give its rea *468 sons for exercising its peremptory challenges was not clearly erroneous.
IV.
Newton’s fourth argument is that “[t]he trial court committed clear error in finding that the defense had discriminated in exercising a peremptory challenge against one juror and putting her onto the jury.” (Newton’s brief at p. 23.) After it denied the defense’s Batson motion, the trial court found that the State had established a prima facie case of discrimination by the defense and required the defense to give its reasons for its strikes. With respect to Veniremember D.W., the following occurred:
“[FIRST DEFENSE COUNSEL]: [Veniremember D.W.] was our I believe the last strike that we had exercised. And early on, I had put a question mark by her because I just wasn’t real sure about her. She was retired from the Auburn University Vet School, and her husband is likewise retired from Auburn University. Which being a graduate of there for the most part is a pretty conservative school. Daughter is a speech pathologist. Those are the notes that I had on her.
“THE COURT: Anything else?
“[SECOND DEFENSE COUNSEL]: Obviously, it was our last strike. We struck her because we didn’t have anybody else to strike, basically.
“[FIRST PROSECUTOR]: That’s not true. Your last strike was Number 185.
“[SECOND PROSECUTOR]: No, that was the alternate. You struck 185 after her. That was an alternate juror.
“[FIRST DEFENSE COUNSEL]: 185 ...
“THE COURT: Well, all right. I’ve got [Veniremember D.W.] I’m going to come back and visit....
“THE COURT: How about [Venire-member D.W.] other than she was your last strike?
“[FIRST DEFENSE COUNSEL]: Well, you know, the lawyers in the room know, as you go along, you’re not as adamant about, you know, numerosity and also reason. But on — which was the other? [Veniremember D.W.]?
“THE COURT: [Veniremember D.W.] It would be 279.
“[FIRST DEFENSE COUNSEL]: [Veniremember D.W.’s] prior employment as well as husband’s employment, and I think I was looking at [second defense counsel’s] notes.
“[FIRST PROSECUTOR]: Your Honor, the only thing he gave was that she was retired from Auburn University. I mean, that was the only reason that he had given....
“THE COURT: All right. The Court is not satisfied, albeit not intentional, I’m not reflecting that with defense counsel, but the Court is not satisfied that [Veniremember D.W.] in particular was struck for a legitimate non-race reason. The Court will note there were 11 struck by the defense. She was one of them. 279. And then the response simply that the defense lawyers said in response to all fairness, ‘That was our last strike.’ I understand, [first defense counsel], you may not have even had the race, age, or whatever in your notes, but I don’t find that to be a legitimate reason for removing her from that particular panel.
“THE COURT: ... But I am going to do something on [Veniremember D.W.] I don’t feel like /all provided me an adequate non-racial reason for having *469 to remove her. And I’m going to place her back on the jury.”
(R. 490-97.)
We addressed a similar situation in Harrison v. State, 879 So.2d 594, 607 (Ala.Crim.App.2003), as follows:
“ ‘When the trial court has required a party to state reasons for the strikes, that party must articulate reasons that are clear, specific, and legitimate, that relate to the particular case, and that are nondiscriminatory. Ex parte Bird, 594 So.2d 676, 679 (Ala.1991); Carter v. State, 603 So.2d 1137 (Ala.Crim.App.1992); Adkins v. State, 639 So.2d 515 (Ala.Crim.App.1993), aff'd, 639 So.2d 522 (Aa.), cert. denied, 513 U.S. 851, 115 S.Ct. 151, 130 L.Ed.2d 90 (1994). Ater race-neutral reasons have been articulated, the moving party can offer evidence showing that those reasons are really a sham or pretext. Ex parte Branch, 526 So.2d 609, 625. On appeal, the trial court’s ruling on the question whether the responding party offered legitimate race-neutral reasons will not be overturned unless it is clearly erroneous. K.S. v. Carr, 618 So.2d 707, 710 (Ala.1993), citing Ex parte Branch, 526 So.2d at 622.’
“Ex parte Brooks, 695 So.2d 184, 190 (Ala.1997).
“Defense counsel stated that she had struck veniremembers 8 and 9 because they allegedly had been laughing and talking and had not been attentive while she. asked questions during the voir dire proceedings. However, the trial court indicated that it had watched the entire venire during the voir dire proceedings. Apparently, it did not observe the conduct about which counsel complained because it told counsel she should have brought any such conduct to his attention. ‘The trial court is in a better position than the appellate court to distinguish bona fide reasons from sham excuses.’ Heard v. State, 584 So.2d 556, 561 (Ala.Crim.App.1991). Aso, the trial court is in the best position to evaluate the demeanor of the veniremembers. See Kuk v. State, 602 So.2d 1213 (Ala.Crim.App.1992). Based on the record before us, we do not conclude that the trial court’s finding was clearly erroneous.”
In this case, in light of the defense’s pattern of striking white veniremembers, its generalizations about Auburn University, and its comment that it did not have anyone else to strike, we conclude that the trial court’s finding that the defense did not provide adequate race-neutral reasons for striking Veniremember D.W. was not clearly erroneous. Therefore, Newton’s argument is without merit.
V.
Newton’s fifth argument is that Aabama’s death penalty scheme is unconstitutional because the jury does not make all of the findings of fact that are necessary to support the imposition of the death penalty. We addressed and rejected a similar argument in Barber v. State, 952 So.2d 393, 458-59 (Ala.Crim.App.2005), as follows:
“First, the appellant contends that the scheme is unconstitutional because the jury does not make all of the findings of fact that are necessary to support the imposition of the death penalty. With regard to his case, he specifically asserts that the trial court, rather than the jury, made findings of fact as to which aggravating and mitigating circumstances existed; that the trial court, rather than the jury, determined that the aggravating circumstances outweighed the mitigating circumstances; that the jury did not agree unanimously on the existence *470 of the two aggravating circumstances; and that the jury did not unanimously find that the aggravating circumstances outweighed the mitigating circumstances.
“In Ex parte Waldrop, 859 So.2d 1181, 1187-88 (Ala.2002), the Alabama Supreme Court explained:
“ ‘It is true that under Alabama law at least one statutory aggravating circumstance under Ala.Code 1975, § 13A-[5]-49, must exist in order for a defendant convicted of a capital offense to be sentenced to death. See Ala.Code 1975, § 13A-5-45(f) (“Unless at least one aggravating circumstance as defined in Section 13A-5-49 exists, the sentence shall be life imprisonment without parole.”); Johnson v. State, 823 So.2d 1, 52 (Ala.Crim.App.2001) (holding that in order to sentence a capital defendant to death, the sentencer “ ‘must determine the existence of at least one of the aggravating circumstances listed in [Ala.Code 1975,] § 13A-5-49’” (quoting Ex paHe Woodard, 631 So.2d 1065, 1070 (Ala.Crim.App.1993))). Many capital offenses listed in Ala. Code 1975, § 13A-5-40, include conduct that clearly corresponds to certain aggravating circumstances found in § 13A-5-49:
“ ‘ “For example, the capital offenses of intentional murder during a rape, § 13A-5-40(a)(3), intentional murder during a robbery, § 13A-5^40(a)(2), intentional murder during a burglary, § 13A-5^0(a)(4), and intentional murder during a kidnapping, § 13A-5^0(a)(l), parallel the aggravating circumstance that ‘[t]he capital offense was committed while the defendant was engaged ... [in a] rape, robbery, burglary or kidnapping,’ § 13A-5-49(4).”
“ lEx part,e Woodard, 631 So.2d at 1070-71 (alterations and omission in original).
“ ‘Furthermore, when a defendant is found guilty of a capital offense, “any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing.” Ala.Code 1975, § 13A-5-45(e); see also Ala.Code 1975, § 13A-5-50 (“The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be. construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.”). This is known as “double-counting” or “overlap,” and Alabama courts “have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps "with an element of the capital offense.” Ex parte Trawick, 698 So.2d 162, 178 (Ala.1997); see also Coral v. State, 628 So.2d 954, 965 (Ala.Crim.App.1992).
“ ‘Because the jury convicted Wal-drop of two counts of murder during a robbery in the first degree, a violation of Ala.Code 1975, § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala.Code 1975, § 13A-5-49(4), was “proven beyond a reasonable doubt.” Ala.Code 1975, § 13A-5-45(e); Ala.Code 1975, § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of death. Ala.Code 1975, § 13A-5-45(f). Thus, in Waldrop’s *471 case, the jury, and not the trial judge, determined the existence of the “aggravating circumstance necessary for imposition of the death penalty.” Ring [v. Arizona], 536 U.S. [584] at 609, 122 S.Ct. [2248] at 2443 [(2002)]. Therefore, the findings reflected in the jury’s verdict alone exposed Wal-drop to a range of punishment that had as its maximum the death penalty. This is all Ring and Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) ], require.’
“(Footnote omitted.)”
In this case, because the jury convicted Newton of the capital offense of robbery-murder, that aggravating circumstance was proven beyond a reasonable doubt. Therefore, the jury, and not the judge, determined the existence of the “aggravating circumstance necessary for imposition of the death penalty.” Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002). Also, because the jury found the existence of one aggravating circumstance, Newton was exposed to or eligible for the death penalty, and “[t]he trial court’s subsequent determination that the murder [was] especially heinous, atrocious, or cruel is a factor that has application only in weighing the mitigating circumstances and the aggravating circumstances.” Waldrop, 859 So.2d at 1190. Accordingly, there was not a Ring violation in this case, and Newton’s arguments to the contrary are without merit.
VI.
Newton’s sixth argument is that “[t]he death qualification of the jury in this case violated [his] rights to an impartial jury and to due process of law under the Sixth and Fourteenth Amendments to the United States Constitution.” (Newton’s brief at p. 34.) We addressed and rejected a similar contention in Sockwell v. State, 675 So.2d 4, 17-18 (Ala.Crim.App.1993), aff'd, 675 So.2d 38 (Ala.1995), as follows:
“The appellant also contends that the trial court erred in failing to quash the jury venire because, he argues, the prosecutor acknowledged that she had challenged by peremptory strikes those veniremembers who had expressed a hesitancy to impose the death sentence, and thus, he argues, she was seeking a jury more prone to convict a capital defendant. This argument is without merit.
“In Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the Supreme Court held that the Constitution does not prohibit states from ‘death qualification’ of juries in capital cases and that so qualifying a jury does not deprive a defendant of an impartial jury. 476 U.S. at 173, 106 S.Ct. at 1764. Alabama courts have consistently held likewise. See Williams v. State, 556 So.2d 737 (Ala.Crim.App.1986), rev’d in part, 556 So.2d 744 (Ala.1987); Edwards v. State, 515 So.2d 86, 88 (Ala.Crim.App.1987); Martin v. State, 494 So.2d 749 (Ala.Crim.App.1985).
“Moreover, it is not improper for a prosecutor to use peremptory challenges to remove veniremembers because they have expressed strong opposition to the death penalty, regardless of whether their opposition would be sufficient to support a challenge for cause. Fisher v. State, 587 So.2d 1027, 1036-37 (Ala.Crim.App.1991), cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992) (citations omitted).”
Newton has made bare allegations regarding the death-qualification process, but he has not supported those allegations. Therefore, we do not find that there was any error in this regard.
*472 VIL
Citing Ring, supra, Newton’s seventh argument is that “[t]he trial court’s failure to instruct the jury that it had to be unanimous as to aggravating circumstances violated [his] rights under the Eighth and Fourteenth Amendments to the United States Constitution.” (Newton’s brief at p. 36.) We addressed and rejected a similar argument in Blackmon v. State, 7 So.3d 397, 432-33 (Ala.Crim.App.2005), as follows:
“Blackmon also argues that her death sentence violates Ring because the jury was not instructed that it had to unanimously determine the existence of the aggravating circumstance and the weight that should be assigned to that aggravating circumstance. Again, in Duke we stated:
“ ‘We note that Ring requires only that the jury unanimously find the existence of an aggravating circumstance in order to make the defendant death-eligible. Alabama law does not require that the jury’s advisory verdict be unanimous before it can recommend death. See § 13A-5-46(f), Ala.Code 1975. Nothing in Ring supports Duke’s claim the jury’s advisory verdict be unanimous.’ Duke, 889 So.2d at 43 n. 4.”
During the guilt phase of the trial, the jury unanimously found beyond a reasonable doubt that Newton committed a murder during the course of committing a robbery. “The jury’s unanimous finding of one aggravating circumstance is sufficient to satisfy Ring.” Ex parte McNabb, 887 So.2d 998, 1006 (Ala.2004). Therefore, Newton’s argument is without merit.
VIII.
Newton’s eighth argument is that “[t]he trial court’s failure to instruct the jury that it did not have to be unanimous as to mitigating circumstances violated [his] rights under the Eighth and Fourteenth Amendments to the United States Constitution.” (Newton’s brief at p. 36.) We addressed a similar argument in Smith v. State, 795 So.2d 788, 835-36 (Ala.Crim.App.2000), as follows:
“Smith also argues that the trial court’s failure to instruct the jury that its finding as to mitigating circumstances did not have to be unanimous, implied that the mitigating circumstances had to be unanimous. There was no objection raised at trial concerning the court’s failure to instruct that the jury’s finding did not have to be unanimous. We review this issue for plain error. Rule 45A, Ala. R.App. P.
“A review of the jury’s instruction on mitigating circumstances does not reflect that the trial court instructed the jury that its decision that evidence was mitigating had to be unanimous. The trial court instructed that jury in accordance with the Alabama Proposed Pattern Jury Instructions for Use in the Guilt Stage of Capital Cases Tried Under Act No. 81-178.
“As we recently stated in Hall v. State, 820 So.2d 113 (Ala.Cr.App.1999):
“ ‘This Court addressed a similar issue in Freeman v. State, 776 So.2d 160 (Ala.Cr.App.1999):
“ ‘ “Freeman also contends that the trial court erred by failing to instruct the jury that its findings as to mitigating circumstances did not have to be unanimous. In failing to so instruct the jury, he says, the trial court implied that the jurors had to unanimously agree before they could find the existence of a mitigating circumstance. Freeman did not object at trial to the trial court’s instructions to the jury concerning mitigating circumstances; *473 therefore, we will review this claim under the plain error rule. Rule [45A,] Ala. R.App. P.”
“ ‘We have reviewed the trial court’s instructions to the jury; we find nothing in the instructions that would have suggested to the jurors, or given them the impression, that their findings concerning the existence of mitigating circumstances had to be unanimous. See Coral v. State, 628 So.2d 954, 985 (Ala.Cr.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994); Windsor v. State, 683 So.2d 1027 (Ala.Cr.App.1994), aff'd, 683 So.2d 1042 (Ala.1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).’ ”
We have carefully reviewed the trial court’s instructions to the jury regarding mitigating circumstances. Based on that review, we do not find that there is any reasonable likelihood or probability that the jurors believed that they were required to agree unanimously on the existence of any particular mitigating circumstance. Therefore, we do not find that there was any error in this regard.
IX.
Newton’s ninth argument is that “[t]he lack of a standard or measure for determining whether aggravating circumstances so outweigh mitigating circumstances as to support a death sentence violated [his] rights to protection from cruel and unusual punishment, due process of law and equal protection of the law.” (Newton’s brief at p. 38.) In Reeves v. State, 807 So.2d 18, 46-47 (Ala.Crim.App.2000), we addressed a similar argument as follows:
“The appellant contends that Alabama’s capital sentencing scheme is unconstitutional because, he says, it ‘does not specify a measure or standard by which aggravating circumstances must outweigh mitigating circumstances in order to warrant recommendation or imposition of a death penalty.’ (Appellant’s brief to this Court, p. 42.) According to the appellant, ‘the absence of a standard and the trial court’s failure to so charge the jury’ renders capital sentencing in Alabama unconstitutional. (Appellant’s brief to this court, p. 42.) Because the appellant is presenting this claim for the first time on appeal, we review it under the plain-error rule. Rule 45A, Ala. R.App. P.
“In Franklin v. Lynaugh, 487 U.S. 164, 179, 108 S.Ct. 2320, 2330, 101 L.Ed.2d 155 (1988), the United States Supreme Court rejected the notion that ‘a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.’ ‘Equally settled is the corollary that the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer.’ Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 1035, 130 L.Ed.2d 1004 (1995).”
See also Adams v. State, 955 So.2d 1037, 1101 (Ala.Crim.App.2003), rev’d in part on other grounds, 955 So.2d 1106 (Ala.2005)(noting that “the Alabama Supreme Court has also held that Alabama’s death-penalty statute is not unconstitutional because it does not assign the specific weight that the trial court is to give the jury’s recommendation”). Therefore, Newton’s argument is without merit.
X.
Newton’s tenth argument is that the trial court erred in admitting “gruesome photographic evidence” during his trial. (Newton’s brief at p. 39.)
*474 “ ‘ “Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence.... Finally photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.” ’
“Gaddy v. State, 698 So.2d 1100, 1148 (Ala.Cr.App.1995), aff'd, 698 So.2d 1150 (Ala.1997) (quoting Ex parte Siebert, 555 So.2d 780, 783-84 (Ala.1989)). Furthermore, photographs that depict the crime scene are relevant and therefore admissible. Aultman v. State, 621 So.2d 353 (Ala.Cr.App.1992), cert. denied, 510 U.S. 954, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993); Ex parte Siebert, 555 So.2d 780, 783-84 (Ala.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); Hill v. State, 516 So.2d 876 (Ala.Cr.App.1987). Finally, photographs may be admissible even if they are cumulative or demonstrate undisputed facts. Stanton v. State, 648 So.2d 638 (Ala.Cr.App.1994); Hopkins v. State, 429 So.2d 1146, 1157 (Ala.Cr.App.1983).”
Hyde v. State, 778 So.2d 199, 234-35 (Ala.Crim.App.1998), aff'd, 778 So.2d 237 (Ala.2000).
“ ‘[Pjhotographs depicting the character and location of wounds on a deceased’s body are admissible even though they are cumulative and are based on undisputed matters. Magwood [v. State], 494 So.2d [124, 141 (Ala.Cr.App.1985), affirmed, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986) ]. The fact that a photograph is gruesome is not grounds to exclude it as long as the photograph sheds light on issues being tried. Id. Also, a photograph may be gruesome and ghastly, but this is not a reason to exclude it as long as the photograph is relevant to the proceedings, even if it tends to inflame the jury. Id.’
“Ex parte Bankhead, 585 So.2d 112 (Ala.1991). Accord, Ex parte Siebert, 555 So.2d 780, 783-84 (Ala.1989), cert. denied, [497] U.S. [1032], 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); McElroy’s at § 207.01(2).”
Parker v. State, 587 So.2d 1072, 1092-93 (Ala.Crim.App.1991), opinion extended after remand, 610 So.2d 1171 (Ala.Crim.App.), aff'd, 610 So.2d 1181 (Ala.1992). Finally,
“ ‘ “[p]hotographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.” Ex parte SiebeH, 555 So.2d 780, 784 (Ala.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See generally C. Gamble, McElroy’s Alabama Evidence, § 207.01(2) (4th ed. 1991). “The photographs of the victim were properly admitted into evidence. Photographic exhibits are admissible even though they may be cumulative, ... demonstrative of undisputed facts, ... or gruesome.... ” Williams v. State, 506 So.2d 368, 371 (Ala.Cr.App.1986), cert. denied, 506 So.2d 372 (Ala.1987).’
“DeBruce v. State, 651 So.2d 599, 607 (Ala.Cr.App.1993). See also Ex parte Bankhead, 585 So.2d 112 (Ala.1991). The court did not err in allowing photographs of the victim’s body to be received into evidence.”
Hutcherson v. State, 677 So.2d 1174, 1200 (Ala.Crim.App.1994), rev’d on other grounds, 677 So.2d 1205 (Ala.1996). See also Giles v. State, 632 So.2d 568 (Ala. *475 Crim.App.1992), aff'd, 632 So.2d 577 (Ala.1993); Haney v. State, 603 So.2d 368 (Ala.Crim.App.1991), aff'd, 603 So.2d 412 (Ala.1992).
In this case, the trial court thoroughly reviewed the photographic evidence before it was admitted at trial. Likewise, we have reviewed the photographic evidence, and we find that it was neither unduly prejudicial nor inflammatory. Rather, the evidence was relevant to depict the nature and extent of the injuries the victim suffered and the crime scene and made it possible for the jury to view them, to corroborate Alexander’s testimony about the murder, and to aid in presenting other testimony about the victim’s body and the crime scene. Therefore, the trial court did not err in admitting the photographic evidence.
XI.
Newton’s eleventh argument is that the trial court and the prosecutor improperly stated to the jury that “its decision on the death penalty was only a recommendation.” (Newton’s brief at p. 48.)
“We have repeatedly stated that a trial court does not diminish the jury’s role by stating that its verdict in the penalty phase is a recommendation or an advisory verdict. Taylor v. State, 666 So.2d 36 (Ala.Cr.App.1994), on remand, 666 So.2d 71 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996); Burton v. State, 651 So.2d 641 (Ala.Cr.App.1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995); White v. State, 587 So.2d 1218 (Ala.Cr.App.1990), aff'd, 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992).”
Smith v. State, 795 So.2d 788, 837 (Ala.Crim.App.2000). Also, in Duke v. State, 889 So.2d 1, 43 (Ala.Crim.App.2002), we held:
“Duke also argues that Ring requires penalty-phase relief when the jury is told that its verdict is ‘advisory’ or merely a ‘recommendation.’ Contrary to Duke’s contention, Ring does not address the advisory nature of a jury’s sentencing recommendation. Duke’s jury was properly informed that under Alabama law, its verdict was an advisory one. See § 13A-5-46, Ala.Code 1975. Thus, the jury was not misled regarding its role in the sentencing decision. See Caldwell v. Mississippi, 472 U.S. 320, 328-29, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); Ex parte Taylor, 666 So.2d 73, 88 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996).”
We have reviewed the arguments and instructions in this case, and we conclude that the jury was not misled regarding its role in sentencing. Neither the trial court nor the prosecutor made any comments that would have diminished the importance of the jury’s role in sentencing. Therefore, Newton’s argument is without merit.
XII.
Newton’s twelfth argument is that the death penalty is no longer constitutionally permissible. Citing Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), Roper v. Simmons, 543 U.S. 551,125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and international human rights developments, he appears to contend that the death penalty violates the Eighth Amendment’s ban on cruel and unusual punishment. We disagree.
In Lawrence, the Supreme Court held that a Texas statute that banned samesex sodomy was unconstitutional. In Roper, *476 the Supreme Court held that “[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed.” 543 U.S. at 578, 125 S.Ct. at 1200. Those cases did make some reference to international law. However, in Roper, the Supreme Court also specifically noted that, although international authorities may be “instructive” for purposes of interpreting whether a punishment is cruel and unusual, 543 U.S. at 575, 125 S.Ct. at 1198, such authorities do not “control[ ] our outcome.” 543 U.S. at 578, 125 S.Ct. at 1200. Rather, it held that “the task of interpreting the Eighth Amendment remains our responsibility.” 543 U.S. at 575,125 S.Ct. at 1198. Finally, as set forth in Part XIII, infra, challenges to the death penalty on Eighth Amendment grounds have been raised, addressed, and rejected repeatedly. Therefore, Newton’s argument is without merit.
XIII.
Newton’s thirteenth argument is that Alabama’s methods of execution are unconstitutional. However,
“courts have repeatedly held that the death penalty is not per se cruel and unusual punishment and that electrocution is not a cruel and unusual method of capital punishment. See Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Williams v. State, 627 So.2d 985 (Ala.Crim.App.1991), aff'd, 627 So.2d 999 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994); Boykin v. State, 281 Ala. 659, 207 So.2d 412 (1968), rev’d on other grounds, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).”
Wynn v. State, 804 So.2d 1122, 1148 (Ala.Crim.App.2000). Also, in Ex parte Belisle, 11 So.3d 323, 339 (Ala.2008), the Alabama Supreme Court addressed the United States Supreme Court’s decision in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), and “conclude[d] that Alabama’s use of lethal injection as a method of execution does not violate the Eighth Amendment to the United States Constitution.” Therefore, Newton’s argument is without merit.
XIV.
Newton’s fourteenth argument is that the prosecutor engaged in misconduct during his arguments to the jury. During the trial, the trial court repeatedly instructed the jury that statements made by the attorneys were not evidence, that the jury was required to base its decision upon the evidence presented during the proceedings, and that the jury was not to base its decision on passion, prejudice, or any other arbitrary factor. We presume that the jury followed the trial court’s instructions. See Taylor v. State, 666 So.2d 36 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995). In judging a prosecutor’s closing argument, the standard is whether the argument “ ‘so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ ” Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)).
“In reviewing allegedly improper prose-cutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App.1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App. *477 1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App.1980), cert. denied, 404 So.2d 100 (Ala.1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App.1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App.1982).”
Bankhead v. State, 585 So.2d 97, 106-07 (Ala.Crim.App.1989), aff'd in relevant part, 585 So.2d 112, 127 (Ala.1991), rev’d on other grounds, 625 So.2d 1146 (Ala.1993). Finally,
“ ‘[djuring closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.’ Rutledge v. State, 523 So.2d 1087, 1100 (Ala.Cr.App.1987), rev’d on other grounds, 523 So.2d 1118 (Ala.1988) (citation omitted). Wide discretion is allowed the trial court in regulating the arguments of counsel. Racine v. State, 290 Ala. 225, 275 So.2d 655 (1973). ‘In evaluating allegedly prejudicial remarks by the prosecutor in closing argument, ... each case must be judged on its own merits,’ Hooks v. State, 534 So.2d 329, 354 (Ala.Cr.App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989) (citations omitted) (quoting Barnett v. State, 52 Ala.App. 260, 264, 291 So.2d 353, 357 (1974)), and the remarks must be evaluated in the context of the whole trial, Duren v. State, 590 So.2d 360 (Ala.Cr.App.1990), aff'd, 590 So.2d 369 (Ala.1991). ‘In order to constitute reversible error, improper argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury.’ Mitchell v. State, 480 So.2d 1254, 1257-58 (Ala.Cr.App.1985) (citations omitted). ‘To justify reversal because of an attorney’s argument to the jury, this court must conclude that substantial prejudice has resulted.’ Twilley v. State, 472 So.2d 1130, 1139 (Ala.Cr.App.1985) (citations omitted).”
Coral v. State, 628 So.2d 954, 985 (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993).
A.
Newton complains about the language highlighted below from the prosecutor’s guilt phase opening statement:
“As I told you earlier, the law of Alabama does not provide that what we would say is a simple murder, an ordinary murder, to require the death penalty. It takes an unusual set of circumstances. It takes a heinous and atrocious act to cause the State to ask that you put somebody to death.”
(R. 511-12) (emphasis added).
‘Tour responsibility is a very serious one. It’s one that is not to be taken lightly, as is mine or anybody else’s in this courtroom. But this is a very important case. It’s a very important case for people in Macon County. It’s a very important case, of course, to the defendant, because he’s the one whose life we’re asking to be taken.”
(R. 523) (emphasis added). Newton objected in both instances, and the trial court sustained his objections. Also, after the second comment, the trial court specifically instructed the jury that the trial was a two-phase trial, that the first phase involved only determining innocence or guilt, and that it was not appropriate to consider aggravators or the heinous nature of the offense at that point in the trial. There *478 fore, we do not find that there was any error in this regard.
B.
Newton also complains about the language highlighted below from the prosecutor’s guilt phase rebuttal closing argument:
“Now, ladies and gentlemen, I submit to you that you don’t have to take her testimony out of this equation. Let me tell you why. When Chaundra sat in this witness chair and testified to you, she exhibited a human characteristic that’s common to all of us. We all want to cast ourselves in the best possible light. You know, I don’t want to get up here and tell you that I’m fat. It’s embarrassing. Do you think I would want to get up here and tell you that I helped murder a man? Do you want to think that I would want to get up here and admit my complicity in a murder as gross and homd and heinous as this murder is?
“... That’s a common human characteristic to cast yourself in the best light that you possibly can. So she certainly is not going to get up here and say, oh, I volunteered, all this kind of stuff.”
(R. 1000-01) (emphasis added). During its closing argument, the defense had presented extensive arguments challenging the credibility of Alexander’s testimony.
As the prosecutor explained when the defense objected, at that point in the trial, he was not arguing that the murder was heinous. Rather, he was responding to the defense’s arguments about Alexander’s credibility and explaining that the horrible nature of the murder could have caused her to be reluctant to admit that she was complicit in committing the offense. Therefore, we conclude that the comment was simply a permissible comment on the evidence and a reply-in-kind to the defense’s implications that Alexander was not credible. ‘“[A] prosecutor has the right to “reply in kind” to statements made by defense counsel in the defense’s closing argument.’ Ex parte Musgrove, 638 So.2d 1360, 1369 (Ala.1993), cert. denied, Rogers v. Alabama, [513] U.S. [845], 115 S.Ct. 136, 130 L.Ed.2d 78 (1994).” Ex parte Taylor, 666 So.2d 73, 88 (Ala.1995). Therefore, we do not find that there was any error in this regard.
C.
Finally, Newton complains about the following that occurred during the prosecutor’s penalty phase rebuttal closing argument:
“I want you to think about this. He sat as the judge, the jury, and the executioner on [Charles] Whatley. He administered the death penalty to [Charles] Whatley without his mamma—
“ — his son or his brother having the opportunity to stand in front of a jury of 12 good Macon County citizens and beg them for his life. He wants justice. I submit to you that he does not want justice. He has demonstrated in his actions that that’s not what he wants. He didn’t give [Charles] Whatley the opportunity to ask you 12 or any other 12 to stand here and say why I should — ”
(R. 1106-07.)
We addressed a similar argument in Gentry v. State, 689 So.2d 894, 906 (Ala.Crim.App.1994), rev’d on other grounds, 689 So.2d 916 (Ala.1996), as follows:
“The appellant contends that the following comments by the prosecutor in closing argument constituted an improper appeal to the jury to have sympathy for the victim: ‘[njobody went out and *479 empaneled a jury for Kim Hill’; ‘[y]ou can look at Ward Gentry, but you cannot look at Kim Hill’; ‘nobody went out and got a judge for Kim’; ‘nobody went out and got two lawyers for Kim’; and ‘[h]e was her judge, and her jury, and her executioner.’ He argues that these comments ‘impermissibly influenced the jury to disregard [its] legal duties and render a guilty verdict because of [its] sympathy for the deceased.’ We do not agree. We view the comments as a call for justice, not sympathy, and, thus conclude that they are within the latitude allowed prosecutors in their exhortation to the jury to discharge its duties. Ex parte Waldrop, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); Rutledge v. State. The comment that Gentry was ‘her judge, and her jury, and her executioner’ was the prosecutor’s impression and opinion derived from the evidence in the case, which he could legitimately argue. Henderson v. State, 584 So.2d 841 (Ala.Cr.App.1988); Galloway v. State, 484 So.2d 1199 (Ala.Cr.App.1986).”
Similarly, we find the prosecutor’s remarks to be an appropriate call for justice. Therefore, we do not find that there was any error in this regard.
XV.
Newton’s fifteenth argument is that the trial court improperly elevated statutory mitigating circumstances above nonstatu-tory mitigating circumstances. Specifically, he contends that the trial court did not give his requested instructions on nonstat-utory mitigating circumstances concerning his difficult family history, the more lenient treatment of his co-defendant, and his poor home environment.
The defense requested that the trial court give the following instructions:
“You may consider as a mitigating circumstance any evidence of Craig Newton’s difficult family history.”
(C.R. 425.)
“If you find that there were more participants in the crime other than the defendant and that another participant has received or will receive more lenient treatment, you must consider this as a mitigating circumstance.”
(C.R. 426.)
“If you find that the defendant grew up in a poor home environment, you must consider that to be a mitigating circumstance.”
(C.R. 427.)
We addressed a similar situation in Barber v. State, 952 So.2d 393, 453-54 (Ala.Crim.App.2005), as follows:
“Third, the appellant contends that the trial court improperly refused to read to the jury a list of proposed non-statutory mitigating factors he submitted. Because he did not present this argument to the trial court, we review it for plain error. See Rule 45A, Ala. R.App. P.
“The appellant filed a list of proposed examples of nonstatutory mitigating evidence that he wanted the trial court to read to the jury during its penalty phase instructions. In addressing this request, the trial court stated:
“ ‘My feeling is still the same that to list those as mitigating factors would be to comment on the evidence. But I do not have a problem with the Defendant or counsel listing those and telling the jury that you contend that those are mitigating factors, then my charge to the jury will be anything you find to be a mitigating factor can be used by you in this deliberative process that you will go through, assuming that the State has not dis *480 proved it. So that’s the way I’m going to handle that. I don’t think I can do it otherwise than to be commenting on the evidence and putting a ‘stamp of approval’ on this as a mitigating circumstance you must consider. I mean, the list ... could go on ad infinitum.
“1... I’ll hear from Defense on that suggestion by the Court. That’s the way I would handle it. I am not going to limit you in using those.... ’
“(R. 1280-81.) The appellant did not object to the trial court’s proposal for handling the list. Moreover, the defense presented evidence regarding most of the nonstatutory mitigating circumstances on the list during its penalty-phase case. Finally, defense counsel listed and urged the jury to find those nonstatutory mitigating circumstances during his penalty-phase closing argument. Under these circumstances, we do not find that there was any error, much less plain error, in this regard.”
Likewise, we conclude that the trial court was not required to list the specific nonstatutory mitigating circumstances the defense offered in its instructions to the jury. As was the case in Barber, in this case, the defense presented evidence regarding Newton’s upbringing and family history and Alexander’s sentence and urged the jury to find that those nonstatu-tory mitigating circumstances existed. Also, the second and third instructions would have required the jury to find that the proffered evidence constituted nonstat-utory mitigation. However, “ ‘[w]hile Lockett and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.’ Bankhead v. State, 585 So.2d 97, 108 (Ala.Cr.App.1989).” Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996). Thus, those instructions were incorrect statements of the law. See Hemphill v. State, 669 So.2d 1020, 1021 (Ala.Crim.App.1995) (holding that a trial court may properly refuse to give a jury instruction that is an incorrect statement of the law). For these reasons, we do not find that the trial court erred in refusing to give the requested instructions set forth above.
Newton also argues that the trial court erred because it did not reference the above-quoted nonstatutory mitigating circumstances in its sentencing order. The trial court made the following findings as to nonstatutory mitigating circumstances:
“The Defendant is approximately twenty-nine (29) years of age. The Defendant grew up in a home witnessing sexual abuse to his sister by his stepfather, Arnold Brown. The Defendant’s biological father, Arthur Newton, testified that he did not keep in touch with his children due to the threats from Arnold Brown.”
(C.R. 491.) Although the trial court must consider all mitigating circumstances, it has discretion in determining whether a particular mitigating circumstance is proven and the weight it will give that circumstance. See Williams v. State, 710 So.2d 1276 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997). The fact that the trial court did not find all of the nonstatutory mitigating circumstances Newton offered does not establish that it did not properly consider such evidence. Rather, it simply establishes that the trial court exercised the discretion afforded to it in that regard. Therefore, Newton’s argument is without merit.
XVI.
Finally, pursuant to § 13A-5-53, Ala.Code 1975, we are required to address *481 the propriety of Newton’s conviction and sentence of death. Newton was indicted for and convicted of capital murder because he committed the murder during the course of a robbery. See § 13A-5-40(a)(2), Ala.Code 1975.
The record does not reflect that the sentence of death was imposed as a result of the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Ala.Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. It found that the State proved two aggravating circumstances — 1) Newton committed the capital offenses while he was engaged in or was an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit, robbery, see § 13A-5-49(4), Ala.Code 1975; and 2) the capital offense was especially heinous, atrocious, or cruel compared to other capital offenses, see § 13A-5-49(8), Ala.Code 1975. The trial court found that there were not any statutory mitigating circumstances in this case. It also made the following findings as to nonstatutory mitigating circumstances:
“The Defendant is approximately twenty-nine (29) years of age. The Defendant grew up in a home witnessing sexual abuse to his sister by his stepfather, Arnold Brown. The Defendant’s biological father, Arthur Newton, testified that he did not keep in touch with his children due to the threats from Arnold Brown.”
(C.R. 491.) The sentencing order shows that the trial court weighed the aggravating and mitigating circumstances and correctly sentenced Newton to death. The record supports its decision, and we agree with its findings.
Section 13A-5-53(b)(2), Ala.Code 1975, requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of the sentence of death. After independently weighing the aggravating and mitigating circumstances, we find that the death sentence is appropriate.
As required by § 13A-5-53(b)(3), Ala. Code 1975, we must determine whether the sentence was disproportionate or excessive when compared to the penalty imposed in similar cases. Newton committed the murder during the course of a robbery. Similar crimes are being punished by death throughout this state. See Gaddy v. State, 698 So.2d 1100 (Ala.Crim.App.1995), aff'd, 698 So.2d 1150 (Ala.1997); Brooks v. State, 695 So.2d 176 (Ala.Crim.App.1996), aff'd, 695 So.2d 184 (Ala.1997); Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997); Peoples v. State, 510 So.2d 554 (Ala.Crim.App.1986), aff'd, 510 So.2d 574 (Ala.1987). Therefore, we find that the sentence was neither disproportionate nor excessive.
Finally, we have searched the entire record for any error that may have adversely affected Newton’s substantial rights, and we have not found any. See Rule 45A, Ala. R.App. P.
Accordingly, we affirm Newton’s convictions and sentences.
AFFIRMED.
WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.